No. 24-60529

# In the United States Court of Appeals for the Fifth Circuit

STATE OF MISSISSIPPI, STATE OF MONTANA, STATE OF LOUISIANA, STATE OF NEBRASKA, STATE OF TENNESSEE, STATE OF TEXAS, AND STATE OF UTAH

*Petitioners,*

v.

UNITED STATES DEPARTMENT OF ENERGY,

*Respondent.*

## PETITIONERS' OPPOSITION TO SIERRA CLUB'S MOTION FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENT

STATE OF MISSISSIPPI, STATE OF MONTANA, STATE OF LOUISI-
ANA, STATE OF NEBRASKA, STATE OF TENNESSEE, STATE OF
TEXAS, AND STATE OF UTAH

*Petitioners,*

v.

UNITED STATES DEPARTMENT OF ENERGY,

*Respondent.*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed
persons and entities as described in the fourth sentence of Rule 28.2.1
have an interest in the outcome of this case. These representations
are made in order that the judges of this court may evaluate possible
disqualification or recusal.

1. Petitioners: State of Mississippi, State of Montana, State of Lou-
   isiana, State of Nebraska, State of Tennessee, State of Texas,
   and State of Utah.

2. Counsel for Petitioners:

   a. For the State of Mississippi: Lynn Fitch, Attorney Gen-
      eral; Justin L. Matheny, Deputy Solicitor General, both
      with the Mississippi Attorney General's Office.

   b. For the State of Montana: Austin Knudsen, Attorney Gen-
      eral; Christian Corrigan, Solicitor General; Peter M. Tor-
      stensen, Jr., Deputy Solicitor General, all with the Mon-
      tana Department of Justice; and Joseph S. St. John, with
      St. John LLC.

c. For the State of Louisiana: Liz Murrill, Attorney General; J. Benjamin Aguiñaga, Solicitor General, both with the Louisiana Department of Justice.

d. For the State of Nebraska: Michael T. Hilgers, Attorney General; Zachary B. Pohlman, Assistant Solicitor General, both with the Nebraska Department of Justice.

e. For the State of Tennessee: Jonathan Skrmetti, Attorney General; J. Matthew Rice, Solicitor General; Whitney D. Hermandorfer, Director of Strategic Litigation, all with the Office of the Tennessee Attorney General.

f. For the State of Texas: Ken Paxton, Attorney General; Brent Webster, First Assistant Attorney General; Aaron L. Nielson, Solicitor General; William F. Cole, Deputy Solicitor General, all with the Office of the Attorney General for the State of Texas.

g. For the State of Utah: Sean Reyes, Attorney General; Stanford Purser, Solicitor General, both with the Office of the Utah Attorney General.

3. <u>Respondent</u>: United States Department of Energy; Jennifer Granholm, Secretary of Energy.

4. <u>Counsel for Respondents</u>: Merrick Garland, Attorney General; Sarah N. Smith, Attorney, all with the U.S. Department of Justice.

5. <u>Movant-Intervenor</u>: Sierra Club.

6. <u>Counsel for Movant-Intervenor Sierra Club</u>: Timothy Ballo with Earthjustice.

/s/ *Joseph S. St. John*
*Counsel for State of Montana*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................ii

TABLE OF CONTENTS .................................................iv

INTRODUCTION ...................................................... 1

BACKGROUND ........................................................ 2

ARGUMENT .......................................................... 5

I.  The underlying statute provides no grounds for intervention by Sierra Club. ................................................... 6

II.  Sierra Club fails the requirements for intervention as of right .............................................................. 7

    A.  Sierra Club has no interest relating to the Final Rule. ......................................................... 8

    B.  Resolution of the action will not impair or impede Sierra Club's ability to protect its interest. ..... 12

    C.  The existing parties adequately represent Sierra Club's interest. ............................................... 13

III.  Sierra Club fails to establish grounds for permissive intervention.................................................. 18

CONCLUSION ........................................................ 19

CERTIFICATE OF SERVICE ........................................... 22

CERTIFICATE OF COMPLIANCE ........................................ 23

# INTRODUCTION

Sierra Club sat out from the rulemaking process, and it failed to file any comment on the challenged Direct Final Rule. Sierra Club nevertheless asks this Court to allow it to intervene. Given that history, Sierra Club not surprisingly fails to meet the standard for intervention, whether as of right or permissively. It has no direct, substantial, or legally protectible interest in the rule. Instead, Sierra Club merely asserts generalized interests in protecting the environment and giving its members access to energy efficient appliances. Such generalized interests amount to little more than a desire to cheerlead the Direct Final Rule.

Nor does the underlying statute provide any grounds for Sierra Club's me-too involvement. Sierra Club seeks the same outcome as defendant Department of Energy ("DOE"), *i.e.*, to defend the Direct Final Rule as promulgated. Any quibbling over whether DOE should have slightly adjusted the standards in the rule to address indoor air quality are simply not at issue. At heart, Sierra Club's asserted interest in environmental protectionism and consumer choice are both not protectible interests but also fully represented by DOE.

1

As a government agency, DOE is presumed to provide adequate representation of citizens' interests. It has the same interest as Sierra Club in defending the Direct Final Rule. DOE did not alter the rule in response to the Petitioner States' comments, and DOE has a history of defending its administrative actions in this Court. Sierra Club's unsupported fear that DOE might change its "priorities" following a change in administration is no more than speculation and is insufficient to support intervention as a matter of law.

Sierra Club's motion should be denied.

## BACKGROUND

This case is a Petition for Review of a direct final rule for Energy Policy and Conservation Act ("EPCA") standards for conventional cooking appliances. Both the State petitioners and the appliance industry have historically opposed such standards. Indeed, as recently as 2021, the Association of Home Appliance Manufacturers ("AHAM") told DOE "[n]othing of significance has changed since DOE determined in 2009 that amended energy conservation standards for conventional cooking products were not justified."[1] AHAM instead urged

---

[1] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-0084

DOE to finalize "a determination not to amend the standard and focus its limited resources on working … on other rulemakings with more opportunities for energy savings."

DOE nevertheless proposed EPCA standards that would have all-but-banned gas appliances.[2] So after years of legal and regulatory fighting—and despite definitive industry statements that many consumer appliances are operating at the realistic limit of available technology—the appliance industry capitulated. AHAM entered a "Joint Statement" with environmental activists that proposed energy efficiency standards for multiple categories of consumer appliances, all as a take-it-or-leave-it package. Movant Sierra Club was not a signatory of the Joint Statement.

To trigger DOE action, the Joint Statement was quietly deposited in otherwise inactive rulemaking dockets.[3] Supporting letters from a small number of ideologically aligned state agencies charged with, e.g., "implementing New York State's climate agenda" were

---

[2] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-2270

[3] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-12811

shortly thereafter deposited in those same inactive dockets.[4]

Relying on the direct final rule provisions of EPCA, 42 U.S.C. § 6295(p)(4), DOE then began publishing a series of direct final rules to implement the standards in the Joint Statement. As relevant here, DOE published notice of a direct final rule titled "Energy Conservation Program: Energy Conservation Standards for Consumer Conventional Cooking Products." 89 Fed. Reg. 11,434 (Feb. 14, 2024).

Led by Nebraska, 23 states filed a comment opposing the direct final rule based on, *inter alia*, the Joint Agreement not complying with the relevant statutory requirements, particularly in view of its non-representative and ideologically-skewed support.[5] Utah and Montana joined Nebraska's comment in full and provided additional technical comments.[6] In contrast, Movant Sierra Club does not appear to have submitted a comment.

In August 2024, the Department of Energy "confirmed" the direct final rule in "Energy Conservation Program: Energy

---

[4] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-12812

[5] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-12838

[6] https://www.regulations.gov/comment/EERE-2014-BT-STD-0005-12841

Conservation Standards for Consumer Conventional Cooking Products," 89 Fed. Reg. 65,520 ("Final Rule" or "DFR"). DOE stated it had determined that the comments received in response to notice did not provide a reasonable basis for withdrawing the rule.

Seven States—Mississippi, Montana, Louisiana, Nebraska, Tennessee, Texas, and Utah ("States")—petitioned this Court for review of the Final Rule, as well as the notice of the Final Rule, asking this Court to hold unlawful, vacate and set them aside.

## ARGUMENT

Despite all its claims of interest, Sierra Club was not a party to the Joint Agreement, and Sierra Club does not appear to have commented on the DFR. Not surprisingly, Sierra Club fails to establish that it should be allowed to intervene as of right or permissively.

In matters involving administrative action before this Court, this Court "has identified two considerations" for requests to intervene: (1) "the statutory design" of the underlying act; and (2) the policies underlying intervention in district courts pursuant to Rule 24 of the Federal Rules of Civil Procedure. *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). Sierra Club's motion fails both

considerations. Sierra Club also asks, almost as an afterthought, for leave to intervene permissively. This request should be denied, too.

## I. The underlying statute provides no grounds for intervention by Sierra Club.

EPCA is the purported authority for the Final Rule. 89 Fed. Reg. 65521. EPCA's structure embodies a deliberate balance of energy efficiency, the availability of "performance' characteristics," and economics, among other things. Indeed, EPCA limits DOE's authority to prescribe any new or amended standard under 42 U.S.C. § 6295 (the section DOE relied upon in the Final Rule, 89 Fed. Reg. 65521) if "'the standard is likely to result in the unavailability … of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same' as otherwise available." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 473 (5th Cir. 2024) (quoting 42 U.S.C. 6295(o)(4)).

Sierra Club's arguments boil down to wanting to advocate for energy efficiency. *See* Mot. at 2 ("Sierra Club seeks to intervene … to protect members' interests in reducing energy consumption and the associated environmental and health impacts" and "its organizational

6

interests in upholding the energy conservation standards for cooking appliances"). But Sierra Club does not assert any particular knowledge regarding the factors DOE is statutorily required to consider. For example, Sierra Club recognizes that DOE may only adopt standards that "achieve the maximum improvement in efficiency" that is "technologically feasible and economically justified." Mot. at 1. But Sierra Club has no interest or expertise in what is technologically feasible or economically justified. However deeply Sierra Club may feel about energy efficiency, a desire to cheerlead is irrelevant under EPCA and insufficient to justify intervention. Under the first consideration for intervention, Sierra Club's motion should fail.

## II. Sierra Club fails the requirements for intervention as of right.

Turning to the second consideration, under Rule 24, a movant may intervene as of right, (1) on a timely motion, only if: (2) the movant "claims an interest relating to the property or transaction that is the subject of the action," and (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," and (4) the existing parties do not

adequately represent that interest. Fed. R. Civ. P. 24(a). The movant bears the burden of establishing its right to intervene. *United States v. Texas E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991). While timeliness is not an issue here, Sierra Club fails to establish that it is entitled to intervene under any of the remaining three factors.

### A. Sierra Club has no interest relating to the Final Rule.

For intervention, a movant's interest must be "a direct, substantial, legally protectable interest in the action, meaning that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009) (internal quotation marks omitted).

Sierra Club asserts two primary interests as supporting intervention: (1) "its members' interests in reducing energy consumption and the associated environmental and health impacts by ensuring the availability and accessibility of energy-saving appliances"; and (2) "organizational interests in upholding the energy conservation standards for cooking appliances." Mot. at 2. Neither is the sort of direct,

8

substantial, legally protectable interest required for intervention.

Sierra Club's entire argument that it has an interest relating to the Final Rule is undermined by one critical fact: Sierra Club failed to file any comment regarding the Final Rule. Indeed, Sierra Club points only to a single page letter submitted in September 2023, well before DOE first published its notice of the DFR or the subsequent confirmation in 2024. That letter contained only three sentences addressing stoves, and because the DFR had not been published, focused on simply encouraging DOE to "complete work" on the rule.

If Sierra Club truly had an interest in the Final Rule, then it surely would have submitted comments. *Cf. Interstate Circuit, Inc. v. United States*, 306 U.S. 208, 226 (1939) ("[S]ilence … becomes evidence of the most convincing character."). Its newfound interest does not support intervention, and Sierra Club's mischaracterization of its "participation" in the "rulemaking" suggests it is aware of its participatory shortcomings.

In any event, Sierra Club's vague claims of interest are woefully insufficient to support intervention. Any interest in ensuring the availability and accessibility of energy-saving appliances, protecting

against the possibility that the States' petition could compromise the adopted standards, or protecting DOE's authority to adopt similar standards for other products are too generalized to support intervention. Millions of Americans could undoubtedly assert those same, generalized interests.

Put differently, Sierra Club has no unique interest in the particular standards adopted in the Final Rule. Congress set statutory requirements for DOE's rulemaking under EPCA. Sierra Club's interest in having DOE promulgate standards in accordance with the law is no greater than any other U.S. citizen. And Sierra Club's members' interest as "consumers who purchase and use cooking appliances and who directly benefit from the updated standards," Mot. at 10, 11, fares no better. That same indirect interest is held by every American who has or intends to have a stove in his or her home.

Sierra Club cites no precedent holding that such generalized interests meet the standard for intervention. Such generalized interests are not direct to the organization and its members, and Sierra Club certainly falls short of showing how those interests are "legally protectable."

The generalized interests Sierra Club asserts also stand in sharp contrast to the interests supporting intervention in the cases it cites. In *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996), for example, the consent decree at issue would have limited the career and promotion opportunities of the movant's members on account of their race, color, or national origin. And the consent decree would have also directly conflicted with an earlier judgment that established the members' right to transfer to certain positions. Such a specific, protectable interest is a far cry from the generalized interest asserted by Sierra Club.

Again, Sierra Club articulates a general interest in upholding what it views as the appropriate legal rule and appropriate EPCA standards. Permitting intervention on such thin grounds would open the floodgates to intervention by every individual and membership organization in the country, burdening the judicial system and making litigation significantly less efficient.

This analysis doesn't change just because Sierra Club envisions itself as a public interest group. Its failure to comment on the DFR underscores its lack of interest in the particular issue, and its

11

inability to assert anything more than generalized interests in consumer welfare, environmentalism, and the rule of law puts it in all caps. If Sierra Club has newfound regret that it did not voice its opinion in the DFR process, it could file an amicus brief in this case to air its views with this Court. But it simply doesn't have the requisite interest to intervene and participate in this litigation.

### B. Resolution of the action will not impair or impede Sierra Club's ability to protect its interest.

Intervention is designed to allow parties with a cognizable interest in the litigation to participate and ensure that their interests are not compromised in their absence. Here, Sierra Club has no interests that could be compromised and, in any event, Sierra Club is adequately represented by the DOE.

Sierra Club cites no precedent for its claim that its intervention is necessary to protect against the "harm and underm[ing of] the years of administrative and legal work" it claims it has undertaken. Mot. at 12. No one has a right to have their policy preferences adopted by an administrative agency; it is absurd to argue that the lobbying and other work they might have undertaken to pursue those

preferences is a protectible interest that would be impaired if the Court does not grant their motion to intervene. In any event, Sierra Club did not deign the DFR process worth its time and investment of resources, making its claim to have spent significant resources on the publication of the Final Rule scurrilous.

### C. The existing parties adequately represent Sierra Club's interest.

This Circuit has created "two presumptions of adequate representation," both of which are present here: (1) "the putative representative is a governmental body or officer charged by law with representing the interests of the absentee"; and (2) "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Edwards*, 78 F.3d at 1005. Here, DOE, to be represented in this case by the U.S. Department of Justice, represents the interests of the U.S.-based Sierra Club and its members, and DOE has the same objective as the Sierra Club, *i.e.*, to defend the Final Rule from the State petitioners' challenge. There is thus a double presumption that the existing parties adequately represent Sierra Club's interest in defending the Final Rule, and Sierra Club fails to overcome either presumption.

13

To overcome the first presumption, Sierra Club "must show that its interest is in fact different from the governmental entity and that the interest will not be represented by it." *Edwards*, 78 F.3d at 1005 (cleaned up). To overcome the second presumption, Sierra Club must show "adversity of interest, collusion, or nonfeasance on the part of the existing party." *Id.*; *accord United States v. Franklin Parish Sch. Bd.*, 47 F.3d 755, 757-58 (5th Cir. 1995).

Although the States filed their petition only a little over a month ago, and DOE has not yet filed any responsive pleading, Sierra Club cannot disclaim knowledge of DOE's position as to the Final Rule. DOE has already made clear that it intends to defend its rulemaking, as it rejected the States' comments and went forward with the Final Rule. *See* 89 Fed. Reg. at 65520, 65524. Even if DOE and Sierra Club previously have "disagreed about EPCA's requirements" as to energy conservation standards, Mot. 3, Sierra Club now apparently agrees with the Final Rule adopted by DOE and didn't submit comments disagreeing even in part. There is no evidence of any past or current disagreement as to the desirability of the Final Rule; rather, the interests of Sierra Club and DOE are aligned in defending it.

Driving the point home, DOE's history is of vigorously defending its EPCA rules against challenges by the states. This Court has gone so far as to chastise DOE for issuing aggressive EPCA regulations where its authority to do so was at-best "unclear" then urging a justification that "borders on frivolous." *Louisiana v. U.S. Dep't of Energy*, 90 F. 4th 461, 470, 477 (5th Cir. 2024).

Moreover, Sierra Club fails to provide support for its assertion that DOE has a "history" of reversing or weakening its positions in litigation when there is a change in the administration. And just as in *Franklin Parish School Board*, where intervention was denied, Sierra Club fails to offer any evidence that DOE is operating in bad faith or has any motivation or interest different from Sierra Club with respect to the Final Rule.

The best Sierra Club offers is a different perspective as to the significance of what Sierra Club refers to as "the direct exposure of building occupants to air pollutant emissions from gas cooking appliances." Mot. 14. But that minor point of divergence has nothing to do with Petitioners' challenge. There will be no opportunity for the Final Rule to be rewritten by this Court. Rather, both DOE and Sierra Club

have the same ultimate objective in having the Final Rule upheld in toto. In fact, Sierra Club offers no argument as to how a slight difference in DOE's view of the uncertain health effects of gas stove emissions will have any practical effect whatsoever in the agency's efforts to defend the Final Rule. And it is both wrong and insulting for Sierra Club to suggest, with no evidence whatsoever and when it was utterly uninvolved in the DFR process, that it has a greater interest than DOE in protecting the environment and public health.

Indeed, Sierra Club asserts only interests that it acknowledges that DOE represents—protecting the environment and public health. The cases cited by Sierra Club involve movants whose particular interests in the case were more particularized, such as parents' interests in keeping their school vouchers (*Brumfield*) and movants' interest in obtaining certain information that they might not be able to obtain through any other means (*Doe #1*). Sierra Club cites no authority supporting its position that DOE's decision to weigh the facts relating to their shared considerations somewhat differently means DOE does not adequately represent Sierra Club's interests.

Continuing a pattern, the cases that Sierra Club cites in support

16

of its supposed broader interest justifying intervention are entirely inapposite. In *Doe #1 v. Glickman*, 256 F.3d 371, 380-81 (5th Cir. 2001), for example, USDA took a position contrary to the movant's in a related suit, failed to contest a temporary restraining order or preliminary injunction, and failed to object to the admission of questionable evidence in the case. Here, in contrast, DOE proceeded with the Final Rule over Petitioner States' objections, and it has given no indication that it would acquiesce to the States' challenge here.

*Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014), is equally inapposite. Sierra Club relies on *Brumfield* to support its assertion it need only show DOE "might" not adequately represent Sierra Club's interests. But the "might not" standard doesn't overcome a presumption of adequate representation. *See id.* at 345-46 (not evident that either presumption applied).

Indeed, in *Brumfield*, the United States sought relief that put some parents at risk of losing vouchers and their range of school choices, while the state also took "a position significantly different" from that of the parents. 749 F.3d at 341, 346. The movants were parents seeking to intervene for the limited purpose of opposing relief

that would have prevented Louisiana from awarding vouchers to students attending schools under federal desegregation orders, at least without authorization from the federal court. Suffice it to say, the relief sought by DOE here is the same as what Sierra Club seeks.

Finally, Sierra Club's arguments about potential "evolving priorities" boil down to their concern that an upcoming change to the administration could potentially lead DOE to not defend the Final Rule. Courts have easily disposed of this argument: "[T]he mere change of administration is insufficient to alter the conclusion that the interests of the [proposed intervenors] are adequately protected by the United States." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). A contrary rule would create a rush of intervenors in nearly every federal case every four years.

*Finally*, it is absurd for Sierra Club to view DOE's and DOJ's decision not to devote limited resources on opposing Sierra Club's motion, as showing that DOE will be an inadequate representative.

## III. Sierra Club fails to establish grounds for permissive intervention.

Finally, Sierra Club's meager effort to obtain permissive

18

intervention should also be denied. Sierra Club fails to describe any "perspective" that it will bring to the case that is not already represented by DOE. Even if Sierra Club has a "long history of advocating for the adoption of strong energy conservation" and focuses on environmental benefits of energy conservation, DOE does too. EPCA dates back to the Arab Oil Embargo; DOE is statutorily required to establish standards for consumer cooking appliances that are designed to achieve "maximum improvement in energy efficiency," as "technologically feasible and economically justified," 89 Fed. Reg. 65524 (reciting statutory obligation); 42 U.S.C. § 6295(o)(2)(A); and DOE is deeply experienced in advocating in support of its regulatory actions. Sierra Club has identified no relevant perspective that warrants its permissive intervention, and it fails to meet the test for intervention by right. Its motion should be denied.

## CONCLUSION

For the foregoing reasons, Sierra Club's motion to intervene should be denied. Should intervention be granted, it should be conditioned on Sierra Club and DOE filing a single, consolidated brief of ordinary length.

Dated: November 22, 2024

Respectfully submitted,

**AUSTIN KNUDSEN**
  **ATTORNEY GENERAL**

CHRISTIAN CORRIGAN
  *Solicitor General*

*/s/Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.
  *Deputy Solicitor General*
MONTANA DEPT. OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*/s/ Joseph S. St. John*
Joseph S. St. John
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com

*Counsel for State of Montana*

**LYNN FITCH**
  **ATTORNEY GENERAL**

*/s/ Justin L. Matheny*
JUSTIN L. MATHENY
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for State of Mississippi*

**LIZ MURRILL**
  **ATTORNEY GENERAL**

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
  *Solicitor General*
LOUISIANA DEPT. OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov

*Counsel for State of Louisiana*

KEN PAXTON
  ATTORNEY GENERAL

BRENT WEBSTER
  *First Assistant
  Attorney General*

AARON L. NIELSON
  *Solicitor General*

/s/ *William F. Cole*
WILLIAM F. COLE
  *Deputy Solicitor General*
OFFICE OF THE
  ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700
william.cole@oag.texas.gov

*Counsel for State of Texas*

SEAN REYES
  ATTORNEY GENERAL

/s/ *Stanford Purser*
Stanford Purser
  *Solicitor General*
OFFICE OF THE UTAH
  ATTORNEY GENERAL
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111

*Counsel for State of Utah*

MICHAEL T. HILGERS
  ATTORNEY GENERAL

/s/ *Zachary B. Pohlman*
ZACHARY B. POHLMAN
  *Assistant Solicitor General*
NEBRASKA DEPT. OF JUSTICE
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2683
zachary.pohlman@ne-
braska.gov

*Counsel for State of Nebraska*

JONATHAN SKRMETTI
  ATTORNEY GENERAL

J. MATTHEW RICE
  *Solicitor General*

/s/ *Whitney D. Hermandorfer*
WHITNEY D. HERMANDORFER
  *Director of Strategic Litigation*
OFFICE OF THE TENNESSEE
  ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
whitney.hermandorfer@
  ag.tn.gov

*Counsel for State of Tennessee*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2024, I electronically filed the foregoing document with the Clerk of this Court by using the CM/ECF system, which will serve all parties automatically.


Dated: November 22, 2024

/s/ Joseph S. St. John
Joseph S. St. John
St. John LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the type-volume limitations of Fifth Circuit Rule 27 and Federal Rule of Appellate Procedure 27 because it contains 3,507 words, excluding the portions exempted by Rule 32(f). This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure Rule 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook and 14-point font.

Dated: November 22, 2024

*/s/ Joseph S. St. John*
Joseph S. St. John
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com