No. 24-60529

# In the United States Court of Appeals for the Fifth Circuit

STATE OF MISSISSIPPI, STATE OF MONTANA, STATE OF
LOUISIANA, STATE OF NEBRASKA, STATE OF TENNESSEE, STATE OF
TEXAS, AND STATE OF UTAH

*Petitioners,*

v.

UNITED STATES DEPARTMENT OF ENERGY,

*Respondent.*

## REPLY BRIEF FOR PETITIONERS

AUSTIN KNUDSEN
 *Attorney General*
CHRISTIAN CORRIGAN
 *Solicitor General*
PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
MONTANA DEPT. OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

JOSEPH S. ST. JOHN
 *Montana Spec. Asst. Sol. Gen.*
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com

JUSTIN L. MATHENY
 *Deputy Solicitor General*
MISSISSIPPI ATTORNEY
 GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES .................................................................... iii

INTRODUCTION .................................................................................... 1

ARGUMENT ............................................................................................. 2

I.    DOE's jurisdictional arguments are meritless. ................................. 2

      A.    This Court has jurisdiction or, alternatively, the case
            should be transferred to a district court ............................... 2

      B.    Petitioners have Article III standing. ................................ 11

II.   The Court should vacate and set aside the Confirmation. ........... 12

      A.    DOE failed to apply the correct legal standard
            to trigger withdrawal of a DFR ........................................ 12

      B.    Petitioners established a reasonable basis for
            withdrawing the DFR ........................................................ 16

      1.    The Joint Agreement was not submitted by persons
            "fairly representative of relevant points of view." ............ 16

      2.    DOE took inconsistent positions on the "critical"
            importance of lifespan, and its claims about reliability are
            unsupported. ..................................................................... 18

CONCLUSION ...................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*API v. United States*, 216 F.3d 50 (D.C. Cir. 2000) .................................. 8

*Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003) ........................ 7

*Brock v. Pierce Cnty.*, 476 U.S. 253 (1986) ............................................... 7

*Business Roundtable v. SEC*, 647 F.3d 1144 (D.C. Cir. 2011) .............. 21

*Chamber of Commerce v. U.S.D.O.L.*, 885 F. 3d 360 (5th Cir. 2018) . 1, 19

*City of Arlington v. FCC*, 668 F.3d 229, 237 (5th Cir. 2012) ................... 5

*Clifton Power Corp. v. FERC*, 294 F.3d 108 (D.C. Cir. 2002) ........ 3, 5, 10

*Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914 (D.C. Cir. 1998) . 21

*Gen. Land Office of Tex. v. U.S.D.O.I.*, 947 F.3d 309 (5th Cir. 2019) 1, 15

*Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050 (D.C. Cir. 1986) ... 21

*FTC v. Std. Oil Co.*, 449 U.S. 232 (1980) .................................................. 9

*ICC v. Board of Locomotive Engineers*, 482 U.S. 270 (1987) ...... 4, 5, 9, 10

*Louisiana v. U.S.D.O.E.*, 90 F. 4th 461 (5th Cir. 2024) .......................... 21

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2013) ................................. 11

*Michigan v. EPA*, 576 U.S. 743, 758 (2015) ........................................... 20

*Milice v. CPSC*, 2 F.4th 999 (D.C. Cir. 2021) .......................................... 6

*Nielsen v. Preap*, 586 U.S. 392 (2019) ........................................... 1, 5, 7, 8

*NRDC v. Abraham v.* 355 F.3d 179 (2d Cir. 2004)....................................3

*NRDC v. EPA*, 706 F.3d 428 (D.C. Cir. 2013) ...........................................9

*NRDC v. NHTSA*, 894 F.3d 95 (2d Cir. 2018)......................................3, 9

*SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018) ...................................8

*Texas v. EEOC*, 933 F.3d 433 (5th Cir. 2019) ..................................11, 12

*TRW, Inc. v. Andrews*, 534 U.S. 19 (2001) ...............................................13

*United States v. ALCOA*, 377 U.S. 271 (1964) .......................................13

*United States v. Kwai Fun Wong*, 575 U.S. 402 (2015) ...........................9

*United States v. Lauderdale Cnty.*, 914 F.3d 960 (5th Cir. 2019) ..........13

*United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399 (1914) ...12

*Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 570 U.S. 338 (2013.....................8

*Univ. of Tex. v. U.S.H.H.S.*, 985 F.3d 472 (5th Cir. 2021)......................20

**Statutes**

28 U.S.C. § 2344....................................................................................4

42 U.S.C. § 12709..................................................................................7

42 U.S.C. § 6295........................................................................... passim

42 U.S.C. § 6306(b) ..........................................................................2, 10

EISA of 2007, Pub. L. 110-140, 121 Stat. 1492 .......................................7

**Other Authorities**

*Achieving—At Long Last—Appliance Efficiency Standards* at 8...........17

Michael Kolber, *Rulemaking Without Rules: An Empirical Study of Direct Final Rulemaking*, 72 Alb. L. Rev. 79, 88-91 (2009) ...........................14

60 Fed. Reg. 43108, 43111 (Aug. 18, 1995) ..............................................14

# INTRODUCTION

DOE's opposition doubles down on gamesmanship and playing fast-and-lose with the rules. As DOE would have it, the public was either supposed to file a petition for review before the comment period closed or, alternatively, guess when the agency made its statutorily-mandated decision not to withdraw the DFR. Indeed, the agency insists its established practice of publishing non-withdrawal decisions was merely a "courtesy" the agency had no obligation to undertake. Supreme Court case law undercuts both arguments. *See ICC v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270 (1987); *Nielsen v. Preap*, 586 U.S. 392 (2019).

The merits fare no better. DOE doesn't dispute the term "direct final rule" had a well-established meaning when the DFR provision was enacted, and the legislative history confirms it contemplates "consensus." Consistent with that understanding, Congress mandated withdrawal if a comment "may provide a reasonable basis" for doing so, *i.e.*, a minimal showing. So DOE edited the word "may" out of the statute. That alone warrants vacatur. *See Gen. Land Office of Tex. v. U.S.D.O.I.*, 947 F.3d 309 (5th Cir. 2020). Regardless, Petitioners made the requisite minimal showing, and DOE's contrary conclusion was arbitrary and capricious.

# ARGUMENT

## I. DOE's jurisdictional arguments are meritless.

### A. This Court has jurisdiction or, alternatively, the case should be transferred to a district court.

Its motion to dismiss having been carried with the case, DOE takes a second bite at the jurisdictional apple. Much of DOE's argument simply rehashes that motion. What is most informative are the opposing arguments for which DOE offers no reply, *see* ECF 42-1, and the continued void of authority supporting the arguments DOE does make.

**1.** DOE's jurisdictional attack focuses on EPCA's timing provision, which provides that "[a]ny person who will be adversely affected by a rule prescribed under [42 U.S.C. §6295] may, at any time within 60 days after the date on which such rule is prescribed, file a petition with the United States court of appeals … for judicial review of such rule." 42 U.S.C. §6306(b). Notwithstanding the statutory requirement for a 110-day comment period after a DFR is published, followed by a decision on withdrawing the DFR, DOE contends that any petition for review was due within 60 days of publication.

**2.** DOE's argument assumes the DFR was "prescribed" at the time it was published. DOE Br. 10-11. That's dubious. The cases DOE cites

link "prescribed" to "publication" because publication is ordinarily "'the culminating event in the rulemaking process,' and, therefore … the controlling point for determining when a challenge must be filed in the court of appeals." *NRDC v. NHTSA*, 894 F.3d 95, 106 (2d Cir. 2018) (quoting *NRDC v. Abraham v.* 355 F.3d 179, 196 & n.8 (2d Cir. 2004)). But 42 U.S.C. §6295(p)(4) mandates events subsequent to publication— a 110-day comment period followed by a withdrawal decision—such that the culminating event is *not* coterminous with publication. Instead, the culminating event is the decision not to withdraw the DFR.

**3.** DOE offers no response to the absurdity of having a petition for review due months before the comment period closed and the Secretary made a decision whether or not to withdraw the DFR. *See* ECF 42-1 at 13. That absurdity is resolved by the incurable prematurity doctrine, pursuant to which "[t]he time for filing the petition for review is tolled until all proceedings before the agency have been completed." ECF 42-1 at 14 (quoting *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110-111 (D.C. Cir. 2002)). The purpose of that bright line test is to discourage the filing of petitions for review until after an agency completes any statutorily-required reconsideration process. It would be "a pointless waste of

3

judicial energy for the court to process any petition for review before the agency has acted on the request for reconsideration." *Clifton Power Corp.*, 294 F.3d at 112 (internal quotation marks omitted).

DOE's token arguments to the contrary are foreclosed by *ICC v. Board of Locomotive Engineers*, 482 U.S. 270 (1987). In that case, the ICC entered an order on October 20, 1982. *Id.* at 275. On April 4, 1983, BLE filed a "petition for clarification," which the ICC denied on May 18, 1983. *Id.* BLE timely sought reconsideration of that denial, which the ICC denied on October 25, 1983. *Id.* at 276. Finally, on December 16, 1983, BLE petitioned for judicial review of the May 18, 1983, and October 25, 1983, denials. *Id.*

The Court began with the applicable provision for judicial review, which provided that a party aggrieved by a "final order" of the Commission "may, within 60 days after its entry, file a petition to review the order in the court of appeals …." *Id.* at 277 (quoting 28 U.S.C. § 2344). The Court first explained that BLE's December 16, 1983, petition for review was timely for purposes of reviewing the October 25, 1983, order, but not the original October 20, 1982 order. *Id.* With respect to the May 18, 1983, order, the Court explained that "[w]hile the petition for review

was filed more than 60 days after that order was served … it was nonetheless effective, because the timely petition for administrative reconsideration stayed the running of the … limitation period until the petition had been acted upon by the Commission." *Id.* at 284 (plurality); *see also id.* at 288 (four-justice concurrence agreeing the May 18, 1983, and October 25, 1983, orders were properly before the court). The Court reasoned that a petition for reconsideration renders the order under reconsideration nonfinal, at least as to the parties seeking reconsideration. *Id.* at 285.

Here, analogous to the petition for review of the May 18, 1983, order in *Locomotive Engineers*, Petitioners submitted adverse comments which rendered the DFR non-final and tolled the deadline for review until DOE denied the request for withdrawal. That result makes sense, avoids the absurdity of having a petition for review due before the comment period closed, and is consistent with *Locomotive Engineers* and *Clifton Power*, both of which were "fixture[s] of the legal backdrop" when Congress enacted the DFR provision. *See Nielsen*, 586 U.S. at 411.

The cases on which DOE relies are not to the contrary. DOE Br. 11, 14. In *City of Arlington v. FCC*, 668 F.3d 229, 237 (5th Cir. 2012), this

Court noted "the general rule that filing a petition for reconsideration … will toll the 60-day period for filing a petition for review…." And in *Milice v. CPSC*, 2 F.4th 994, 1001 (D.C. Cir. 2021), the D.C. Circuit carefully noted the incurable prematurity doctrine didn't apply because the petitioner never asked the CPSC to reconsider the challenged rule, and her public interest lawyers did not write their own comment on her behalf. Both cases hinged on the petitioner's failure to timely seek reconsideration. The situation here—where Petitioners timely submitted adverse comments seeking withdrawal (*i.e.*, reconsideration)—falls within the general rule recognized in *City of Arlington*, and it is precisely the circumstance *Milice* distinguished.

**3.** DOE thus is left insisting the agency was obligated to make its non-withdrawal determination by June 13, 2024; its publication of the Confirmation was merely a courtesy; and the Confirmation was legally meaningless. DOE Br. 15.

**a.** DOE's June 13, 2024, deadline derives from the provision that "[n]ot later than 120 days after the date on which a direct final rule … is published in the Federal Register, the Secretary shall withdraw the direct final rule…." 42 U.S.C. § 6295(p)(4)(C). But the Supreme Court has

repeatedly held that "a statutory rule that officials "'shall" act within a specified time does not by itself preclude action later.'" *Nielsen*, 586 U.S. at 411 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003)). "[I]f a statute does not specify a consequence for noncompliance with statutory timing provisions, the federal courts will not in the ordinary course impose their own coercive sanction." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Brock v. Pierce Cnty.*, 476 U.S. 253 (1986) (holding that a statutory command to resolve a complaint within 120 days did not deprive an agency of authority to recoup overpayments if it failed to meet the deadline).

When Congress enacted the DFR provision in 2007, it was presumably aware of that legal backdrop. Indeed, in *Nielsen*, the Supreme Court applied that presumption to a statute enacted in 1996 and held a statutory deadline did not foreclose subsequent action. Moreover, Congress demonstrated it knew how to overcome that presumption in the same statute that adopted the DFR provision: other provisions make energy efficiency standards self-executing where the responsible agency fails to act. EISA of 2007, Pub. L. 110-140, 121 Stat. 1492, 1648 (codified at 42 U.S.C. § 12709(d)). The Court must give effect

to Congress's choice not to do so in the DFR provision. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 363 (2018); *Univ. of Tex. Sw. Med. Ctr. v. Nasser*, 570 U.S. 338, 353-354 (2013). DOE's argument that the 120-day deadline was self-executing is simply wrong.

**b.** As DOE would have it, the public had to guess whether the agency had acted on withdrawal and—if so—when. DOE cites no authority to support that position. DOE also doesn't point to a record of decision or any publication prior to the Confirmation, thereby forfeiting any argument for a date other than June 12 on a self-execution theory that is foreclosed by *Nielsen*, *supra*. Accordingly, there is no basis for finding final agency action confirming the DFR until the Confirmation was published on August 12, 2024. *See API v. EPA*, 216 F.3d 50, 51-52 (D.C. Cir. 2000) ("In determining whether an agency has taken final action the court has looked to a variety of factors, including … publication or lack thereof in the Federal Register …, and whether the action has a binding effect on the rights of parties, and on the agency's ability to exercise discretion in the future." (internal quotation marks omitted)). And there is no dispute the petition for review in this case was timely vis-à-vis August 12.

**c.** The Confirmation also wasn't meaningless. It was the Confirmation that foreclosed DOE's ability to rescind the standards in the DFR or set lower efficiency standards. *See* 42 U.S.C. § 6295 (p)(4)(C)(iii). Indeed, that's why DOE insisted "the direct final rule itself, as well as the notice of effective date—must … be vacated" in *APGA*. ECF 42-4 at 4 & n.1.[1]

**4.** At bottom, the parties dispute whether 42 U.S.C. § 6306(b) is jurisdictional or a claims processing rule, with each analogizing to cases addressing other statutory provisions. *See* ECF 42-1 at 14-16 (citing *NRDC v. NHTSA*, 894 F.3d 95, 107 (2d Cir. 2018), and *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015)). And assuming *arguendo* it is jurisdictional, the parties further dispute whether the incurable prematurity doctrine applies. *See Locomotive Engineers* and *Clifton*

---

[1] Finality is "pragmatic." *FTC v. Std. Oil Co.*, 449 U.S. 232, 240-241 (1980) (distinguishing "a threshold determination" pending further inquiry from "a definitive statement" of the agency's position). Viewed through that lens, an EPCA DFR is inherently tentative; further proceedings are statutorily required; and the agency's definitive view only comes with the non-withdrawal decision. *See NRDC v. EPA*, 706 F.3d 428, 433 (D.C. Cir. 2013) (rejecting agency argument that petition was untimely: an agency "consummate[s] the decisionmaking process ... only when it published its final views.").

*Power*, *supra*. Regardless, DOE cannot circumvent review of the Confirmation in toto. DOE Br. 17.[2]

That's because 42 U.S.C. § 6306(b) provides only "for judicial review of **such rule**," *i.e.*, "a rule prescribed under [42 U.S.C. § 6295]." If Section 6306(b) is jurisdictional and review of the non-withdrawal decision isn't folded into review of the underlying DFR, then the non-withdrawal is a distinct final agency action that falls outside of Section 6306. *See Locomotive Engineers*, 482 U.S. at 277 (treating an order denying reconsideration as a distinct agency action subject to review). And if jurisdiction to review that distinct agency action doesn't lie in this Court, Petitioners otherwise lack an adequate remedy, and the non-withdrawal Confirmation is reviewable under the APA in federal district court. *See* 5 U.S.C. § 704. There, timeliness isn't an issue; it's subject to a six-year statute of limitations. The "strong presumption in favor of finding jurisdiction *somewhere* absent clear indication of legislative intent to insulate an agency action from such scrutiny," *Abraham*, 355 F.3d at 192

_____

[2] DOE does not argue the decision is committed by law to agency discretion, and the statute provides meaningful standards for judicial review. DOE has forfeited any argument to the contrary.

n.7, reinforces that this Court should transfer this case pursuant to 28 U.S.C. § 1631 if it lacks jurisdiction. *See* ECF 42-1 at 18.

### B. Petitioners have Article III standing.

Doubling-down on its contention that the Confirmation notice has no legal effect, DOE contends Petitioners lack Article III standing. DOE Br. 12. DOE cites no authority for the proposition that the Confirmation has no legal effect, and, again, DOE is wrong. It was the Confirmation that foreclosed DOE's ability to rescind the standards in the DFR or set lower efficiency standards. *See* 42 U.S.C. §6295(p)(4)(C)(III).

Turning to what Petitioners must show to establish standing, the Court assumes Petitioners are correct on the merits of their claims. *Texas v. EEOC*, 933 F.3d 433, 447 (5th Cir. 2019). Petitioners "need not demonstrate that but for the procedural violation the agency action would have been different." *Mendoza v. Perez*, 754 F.3d 1002, 1010 (D.C. Cir. 2014). "Nor need they establish that correcting the procedural violation would necessarily alter the final effect of the agency's action on the plaintiffs' interest." *Id.* It's enough for standing that "there is some possibility that the requested relief will prompt the injury-causing party

to reconsider the decision that allegedly harmed the litigant." *Texas*, 933 F.3d at 447 (internal quotation marks omitted).

Applied here, an order vacating and setting aside the non-withdrawal decision would—at a minimum—permit DOE consider Petitioners' comments under the correct legal standard and withdraw the DFR. And with respect to the DFR itself, DOE doesn't dispute that Petitioners have standing; the agency only disputes the timeliness of the challenge.

## II.     The Court should vacate and set aside the Confirmation.

### A.     DOE failed to apply the correct legal standard to trigger withdrawal of a DFR.

**1.** On the merits, Petitioners urged a plain reading of the statutory text: "the Secretary ***shall*** withdraw" a DFR if DOE "receives 1 or more adverse public comments" and "such adverse public comments … ***may*** provide a reasonable basis for withdrawing the direct final rule." Pet. Br. 23 (quoting 42 U.S.C. § 6295(p)(4)(C); emphasis in original). The word "shall" indicates withdrawal is mandatory, and the Supreme Court has held the word "may" in a statute indicates contingency, possibility, or probability, not certainty. Pet. Br. 23-24 (citing *United States v. Lexington Mill & Elevator Co.*, 232 U.S. 399, 411 (1914), and *United*

*States v. ALCOA*, 377 U.S. 271, 280 (1964)). DOE's less-than-candid response is to ignore the word "shall" and replace the critical word "may" with an ellipsis. DOE Br. 19; *see also id.* at 20 (paraphrasing the standard as "the Secretary determines that such comments provide a reasonable basis to withdraw the rule").

Of course, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *United States v. Lauderdale Cnty.*, 914 F.3d 960, 965 (5th Cir. 2019) (quoting *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001)). DOE's omission fails to give effect to the word "may" and the minimal standard it implies.

**2.** That minimal standard is supported by the established usage. DOE doesn't dispute that a "direct final rule" had a well-established usage requiring consensus and the absence of substantive objection. Instead, DOE suggests Congress departed from that usage by changing the standard for withdrawal from the "significant adverse comment" standard DOE originally proposed. DOE Br. 19-20. The truth is the opposite.

In the years preceding the adoption of the EPCA DFR provision, there was debate over what level of "adverse" commenting was required to trigger withdrawal of a DFR, with some agencies saying "that a mere notice of intent to file an adverse comment is sufficient" to mandate withdrawal, and others requiring something more. *See* 60 Fed. Reg. 43108, 43111 (Aug. 18, 1995); Michael Kolber, *Rulemaking Without Rules: An Empirical Study of Direct Final Rulemaking*, 72 Alb. L. Rev. 79, 88-91 (2009). Congress avoided that debate by adding a specific standard in § 6295(p)(4)(C)(i)(II). Far from being surplusage, that subparagraph makes clear that a naked objection isn't enough, but the adverse comment need only be such that it "may provide a reasonable basis for withdrawing" the DFR, *i.e.*, the adverse comment need not definitively undermine the DFR in order to trigger withdrawal followed by ordinary notice-and-comment rulemaking.

**3.** DOE offers no response to its application of the incorrect legal standard. *See* Pet. Br. 23-24, 30. And it applied the incorrect standard pervasively. Indeed, although DOE recited the correct "may provide" standard, it repeatedly stated "the comments did [or do] not provide a reasonable basis for withdrawing the direct final rule." 89 Fed. Reg. at

65521, 65524. DOE specifically made that statement with respect to Petitioners: "DOE has determined that the comment provided by the AGs of UT and MT does not provide a reasonable basis for withdrawal of the February 2024 Direct Final Rule." *Id.* at 65524, 65526, 65527. DOE likewise "determined that the comments provided by … the AGs of NE et al … do not provide a reasonable basis for withdrawal…." *Id.* at 65525, 65530. And characterizing its own analysis, DOE said it "considered whether any adverse comment received during the 110-day comment period … provided a reasonable basis for withdrawal of the direct final rule." *Id.* at 65523. In each case, DOE omitted the word "may" from the standard it applied. That omission has consequences.

In *General Land Office of Texas v. U.S.D.O.I.*, 947 F.3d 309, 320 (5th Cir. 2020), this Court held that an agency which similarly recited the correct legal standard but then applied an inappropriately heightened standard was acting arbitrarily and capriciously. That's because an agency decision is *per se* arbitrary and capricious "if the agency applies an incorrect legal standard." *Id.* (compiling cases). The Court accordingly need go no further to vacate and set aside the non-withdrawal decision.

**B. Petitioners established a reasonable basis for withdrawing the DFR.**

    **1. The Joint Agreement was not submitted by persons "fairly representative of relevant points of view."**

A condition-precedent to a DFR is a "statement that is submitted jointly by interested persons that are fairly representative of relevant points of view (including representatives of manufacturers of covered products, States, and efficiency advocates), as determined by the Secretary." 42 U.S.C. §6295. DOE doesn't suggest it didn't know the cooking products standards were controversial, or that many states opposed them. Indeed, the administrative record reflects that 22 states had previously fielded criticisms. ARID.117. Consumer and energy advocates did, too, including with attacks on the trivial-to-non-existent energy and economic savings in the more-stringent standards that were previously proposed. ARID.120, ARID.124, ARID.133. And DOE notably doesn't dispute the Joint Agreement was privately negotiated and quietly deposited into inactive dockets to trigger action. *See* Pet. Br. 14. DOE instead implies that—notwithstanding all that—the Joint Agreement was submitted by persons "fairly representative of relevant points of view."

Implicitly acknowledging the widespread opposition, DOE points to legislative history as indicating the DFR provision was focused on speed, and that requiring widespread support would slow rulemaking. DOE Br. 22-23. But the same legislative history confirms the DFR was intended for use only "in some cases" and only "when a ***clear consensus*** for standards exist[s] among the manufacturers, efficiency advocates and other stakeholders." *Achieving—At Long Last—Appliance Efficiency Standards* at 8 (statement of Assist. Secretary Karsner) (emphasis added). That's the nub of what Petitioners urged in their comment, ARID.187, and it's what they continue to argue now.

Put simply, the "fairly representative" requirement can't be read out of the statute. Congress did not create a regime permitting a handful of manufacturers, States, and efficiency advocates to ram through a widely-opposed efficiency standard without notice-and-comment rulemaking. In textual terms, a joint statement arguably must include "representatives of manufacturers of covered products, States, and

efficiency advocates."[3] But checking those boxes isn't sufficient to establish the statement is submitted by persons "fairly representative of relevant points of view." Systematically excluding particular points of view—like opponents of the proposed cooking product standards—is the antithesis of the "fairly representative" requirement. *See Taylor v. Louisiana*, 419 U.S. 522, 537-538 (1975) (systematic exclusion of women violated requirement that jury venire be "fairly representative" of the community). The Joint Agreement never should have proceeded to a DFR, and Petitioners' comment to that effect "may provide a reasonable basis for withdrawal." DOE's contrary conclusion was arbitrary and capricious.

> **2.    DOE took inconsistent positions on the "critical" importance of lifespan, and its claims about reliability are unsupported.**

Petitioners Utah and Montana commented that DOE must consider energy use over a product's entire lifecycle, and that DOE was improperly

---

[3] Strictly speaking, no states submitted the Joint Agreement. ARID.164. If DOE is relying on agencies from New York, California, and Massachusetts filing a "letter in support" notwithstanding the statutory requirement, *see* DOE Br. 22 (citing ARID.164, ARID.165, and ARID.166), then DOE should have weighed those comments against the much larger number of states opposing.

assuming that its "mandating a significant increase in appliance complexity—e.g., low-standby-loss electronic controls, 89 Fed. Reg. at 11,452, control systems with non-linear power supplies, *id.* at 11,436, 11,540, complex burners, *id.* at 11,461, etc.—will have no impact on lifespan." ARID.190. Utah and Montana supported their comment with excerpts from engineering textbooks. *Id.*

In the Confirmation, DOE concluded "the comment provided by the AG's of UT and MT does not provide a reasonable basis for withdrawal" because "product lifespan does not affect energy use or energy efficiency as defined in EPCA." 89 Fed. Reg. at 65,524. Contradicting itself, DOE now concedes "the estimated lifetime of covered products" was "critical" to its analysis. DOE Br. 29 (citing 89 Fed. Reg. 11,477). In short, DOE's defense highlights its nakedly inconsistent positions between the DFR and the Confirmation. That DOE rejected Utah and Montana's comment based on a reversal of its earlier position—a reversal that it now disavows—is an internal inconsistency. Such "[i]llogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action." *Chamber of Commerce v. U.S.D.O.L.*, 885 F. 3d 360, 382 (5th Cir. 2018). That DOE's reversal was an abject refusal to consider the accuracy

of a "critical" part of the analysis renders it even more arbitrary. *See Univ. of Tex. v. U.S.H.H.S.*, 985 F.3d 472, 475-76 (5th Cir. 2021).

Ignoring that inconsistency, DOE pretends that it did consider lifespan; it relied on a "'variety of sources,' including input from AHAM regarding the average useful life for different product categories" in doing so; and that its analysis was based on "real world data." DOE Br. 30 (quoting 89 Fed.Reg. at 11,477). But DOE tellingly doesn't point to that data in the administrative record, and Petitioners haven't located it. The "data" appears to boil down to DOE *ipse dixit* supported only by AHAM *ipse dixit*, with no actual data in sight.[4]

On this record, *Louisiana v. Department of Energy* is controlling. There, this Court found arbitrary and capricious action where DOE

---

[4] DOE tries to retroactively justify its actions with additional explanations. DOE Br. 31 & n.4. But it's a "foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015). Regardless, DOE's retroactive justifications are yet more unexplained inconsistency. As DOE would have it, consideration of information related to refrigerators could support the DFR, 89 Fed. Reg. at 11475, but DOE's statements about the reliability of power supplies in microwaves can't be used to call the DFR into question, DOE Br. 31 & n.4, despite the latter addressing the same power supplies required by the DFR. *See* Pet. Br. 31-32.

"recognized the facts that undermined its [rule], cited other facts ... and then implicitly credited the latter without explaining why." 90 F. 4th 461, 473 (5th Cir. 2024). Here, DOE isn't even citing other facts, merely crediting the *ipse dixit* of an organization promoting the Joint Agreement. Such "bare acknowledgment" and "conclusory statements" are not enough to meet DOE's burden, particularly given that DOE's claims contradict literal textbook expectations. *Id.*

Put differently: "Stating that a factor was considered ... is not a substitute for considering it." *Getty v. Fed. Sav. & Loan Ins. Corp.*, 805 F.2d 1050, 1055 (D.C. Cir. 1986); *see also Business Roundtable v. SEC*, 647 F.3d 1144, 1149 (D.C. Cir. 2011) (action was arbitrary and capricious where agency "neglected to support its predictive judgments; contradicted itself; and failed to respond to substantial problems raised by commenters"); *Columbia Falls Aluminum Co. v. EPA*, 139 F.3d 914, 923 (D.C. Cir. 1998) (describing an agency's "affirmative burden of promulgating and explaining a non-arbitrary, noncapricious rule"). The DFR was arbitrary and capricious, as was DOE's refusal to withdraw it.

## CONCLUSION

This Court has jurisdiction; DOE failed to apply the correct legal standard; and under the correct legal standard, the DFR should have been withdrawn. The Court should accordingly vacate and set aside both DOE's non-withdrawal decision and the DFR itself.

Dated: May 5, 2025

**AUSTIN KNUDSEN**
  **ATTORNEY GENERAL**

CHRISTIAN CORRIGAN
  *Solicitor General*

*/s/ Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.
  *Deputy Solicitor General*
MONTANA DEPT. OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov


*/s/ Joseph S. St. John*
Joseph S. St. John
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
(410) 212-3475
scott@stjohnlaw.com

*Counsel for State of Montana*

Respectfully submitted,

**LYNN FITCH**
  **ATTORNEY GENERAL**

*/s/ Justin L. Matheny*
JUSTIN L. MATHENY
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY
  GENERAL'S OFFICE
P.O. Box 220
Jackson, MS 39205-0220
(601) 359-3680
justin.matheny@ago.ms.gov


*Counsel for State of Mississippi*


**LIZ MURRILL**
  **ATTORNEY GENERAL**

*/s/ J. Benjamin Aguiñaga*
J. BENJAMIN AGUIÑAGA
  *Solicitor General*
LOUISIANA DEPT. OF JUSTICE
1885 N. Third Street
Baton Rouge, LA 70804
(225) 326-6766
AguinagaB@ag.louisiana.gov


*Counsel for State of Louisiana*

KEN PAXTON
  ATTORNEY GENERAL

BRENT WEBSTER
  *First Assistant*
  *Attorney General*

AARON L. NIELSON
  *Solicitor General*

/s/ *William F. Cole*
WILLIAM F. COLE
  *Principal Deputy*
  *Solicitor General*
OFFICE OF THE
  ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700
william.cole@oag.texas.gov

*Counsel for State of Texas*


DEREK BROWN
  ATTORNEY GENERAL

/s/ *Stanford Purser*
Stanford Purser
  *Solicitor General*
OFFICE OF THE UTAH
  ATTORNEY GENERAL
160 E. 300 S., 5th floor
Salt Lake City, Utah 84111

*Counsel for State of Utah*

MICHAEL T. HILGERS
  ATTORNEY GENERAL

/s/ *Zachary B. Pohlman*
ZACHARY B. POHLMAN
  *Assistant Solicitor General*
NEBRASKA DEPT. OF JUSTICE
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2683
zachary.pohlman@nebraska.gov

*Counsel for State of Nebraska*


JONATHAN SKRMETTI
  ATTORNEY GENERAL

/s/ *J. Matthew Rice*
J. MATTHEW RICE
  *Solicitor General*
OFFICE OF THE TENNESSEE
  ATTORNEY GENERAL
P.O. Box 20207
Nashville, TN 37202
(615) 741-3491
matt.rice@ag.tn.gov

*Counsel for State of Tennessee*

## CERTIFICATE OF COMPLIANCE

As required by Federal Rule of Appellate Procedure 32(f) and (g), I certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7), because it contains 4,267 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Century Schoolbook font using Microsoft Word.

*/s/ Joseph S. St. John*

**CERTIFICATE OF SERVICE**

I certify that on May 5, 2025, I electronically filed the above with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Joseph S. St. John